UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:                                                                                  Chapter 11

ARMANDO M. MONTERO and                                      Case No. 15-23197-LMI
LIMBANIA BARRIOS,
      Debtors.
_____/

## DEBTORS' AMENDED PLAN OF REORGANIZATION

Armando Montero and Limbania Barrios, debtors and debtors-in-possession (the "Debtors"), propose their Amended Plan of Reorganization (the "Plan"), pursuant to 11 U.S.C. §1121 of the United States Bankruptcy Code.

## INTRODUCTION

Reference is made to the Disclosure Statement (the "Disclosure Statement") accompanying this Plan for a discussion of, among other things, the major events of this Chapter 11 Case, treatment of Claims against and interests in the Debtors, preservation of litigation claims, risk factors, liquidation analysis, tax implications, alternatives to the Plan, a summary and analysis of this Plan, and certain related matters.

All Holders of Claims against the Debtors entitled to vote on the Plan are encouraged to read the Plan and the Disclosure Statement in their entirety before voting to accept or reject the Plan. Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. If you do not have an attorney, you may wish to consult one.

Subject to certain restrictions and requirements set forth in 11 U.S.C. § 1127, Bankruptcy Rule 3019, and in this Plan, the Debtors reserve the right to alter, amend, modify, revoke, or withdraw this Plan prior to the Effective Date (as defined below).

## ARTICLE I - DEFINITIONS

As used in this Plan, the following terms shall have the respective meanings specified below, unless the context otherwise requires:

1.1. "14400 Lake Candlewood" means the Debtors' investment property, a single family 3/2 home, located at 14400 Lake Candlewood Court, Miami Lakes, FL 33014.

1.2. "2051 NW 14th Street" means the Debtors' investment property, a single family 2/1 home, located on the Miami River at 2051 NW 14th Street, Miami, FL 33125.

1.3. "6841 SW 73rd Street" means the Debtors' home located at 6841 SW 73rd Street, Miami, FL 33143.

1.4. Administrative Creditor" means any creditor entitled to payment of an administrative expense claim.

1.2. "Administrative Expense Claim" means any cost or expense of administration of the Chapter 11 case allowed by under Section 503(b) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the Debtor's estate; any actual and necessary expenses of operating the business of the Debtor, including loans or other advances to the Debtor in possession, and all allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under Section 330 of the Bankruptcy Code; and any fees or charges assessed against the Debtor's estate under Chapter 123 of Title 28, United States Code.

1.3. "Allowed Claim" means any claim against the Debtor, proof of which was filed on or before the claims bar date, or which has been or hereafter is listed by the Debtor as liquidated in amount and not disputed or contingent and, in either case, a claim as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by the Bankruptcy Code or the Bankruptcy Rules, or as to which any objection has been determined by a Final Order. Unless otherwise specified herein, "Allowed Claim" shall not include interest on the principal amount of such claim from and after the petition date.

1.4. "Bankruptcy Code" means the United States Bankruptcy Code, as amended, and as set forth in Section 101, et seq., of Title 11, United States Code.

1.5. "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of Florida, having jurisdiction over this Chapter 11 case.

1.6. "Bankruptcy Ru1es" means the Federal Ru1es of Bankruptcy Procedure, as amended, as applicable to cases pending before the Bankruptcy Court.

1.7. "Chapter 11 Case" means this joint Chapter 11 case filed July 22, 2015.

1.8 Not used.

1.9 Not used.

1.10. "Claim" means any right to payment from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

1.11. "Confirmation Date" means the date upon which the Bankruptcy Court, District Court or other appellate court shall enter an Order confirming this Plan in accordance with the

provisions of Chapter 11 of the Bankruptcy Code, or if the operation of such Order is stayed, the date upon which such stay expires or is vacated.

1.12. "Confirmation Order" means the Order of the Bankruptcy Court, District Court, or other appellate Court confirming this Plan.

1.13. "Contested Claim" means any claim as to which the Debtor, or any other party in interest has interposed an objection in accordance with the Bankruptcy Code and the Bankruptcy Rules, which objection has not been withdrawn or determined by a Final Order.

1.14. Not Used.

1.15. "Creditor" means any person that is the holder of a claim against the Debtor, that arose on or before the Petition Date, or a claim against the Debtor's estate of any kind, specified in 11 U.S.C. §§ 502(g), 502(h), or 502(i).

1.l6. "Debtors" mean Armando M. Montero and Limbania Barrios.

1.17. "District Court" means the United States District Court for the Southern District of Florida.

1.18. "Effective Date" means the first business day that is at least thirty (30) days after the Confirmation Order becomes a Final Order.

1.l9. "Final Order" means an order or a judgment which has not been reversed, stayed, modified, or amended and as to which the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing is pending.

1.20. Not used.

1.21. Not used

1.22. "Impaired Claim" means any class of creditors whose claims are impaired by payments as proposed in this plan, in accordance with II U.S.C. § 1124.

1.23. "Interest" means any equity or membership interest in the Debtor.

1.24. "Person" means an individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, any unincorporated organization, or a government or any political subdivision thereof or entity.

1.25. "Petition Date" means July 22, 2015, the date on which an Order for Relief was entered by the Court.

1.26. "Priority Claims" means any claim, other than an administrative expense or a tax claim, to the extent entitled to priority in payment under 11 U.S.C. § 507(a).

provisions of Chapter 11 of the Bankruptcy Code, or if the operation of such Order is stayed, the date upon which such stay expires or is vacated.

1.12. "Confirmation Order" means the Order of the Bankruptcy Court, District Court, or other appellate Court confirming this Plan.

1.13. "Contested Claim" means any claim as to which the Debtor, or any other party in interest has interposed an objection in accordance with the Bankruptcy Code and the Bankruptcy Rules, which objection has not been withdrawn or determined by a Final Order.

1.14. Not Used.

1.15. "Creditor" means any person that is the holder of a claim against the Debtor, that arose on or before the Petition Date, or a claim against the Debtor's estate of any kind, specified in 11 U.S.C. §§ 502(g), 502(h), or 502(i).

1.l6. "Debtors" mean Armando M. Montero and Limbania Barrios.

1.17. "District Court" means the United States District Court for the Southern District of Florida.

1.18. "Effective Date" means the first business day that is at least thirty (30) days after the Confirmation Order becomes a Final Order.

1.l9. "Final Order" means an order or a judgment which has not been reversed, stayed, modified, or amended and as to which the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing is pending.

1.20. Not used.

1.21. Not used

1.22. "Impaired Claim" means any class of creditors whose claims are impaired by payments as proposed in this plan, in accordance with II U.S.C. § 1124.

1.23. "Interest" means any equity or membership interest in the Debtor.

1.24. "Person" means an individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, any unincorporated organization, or a government or any political subdivision thereof or entity.

1.25. "Petition Date" means July 22, 2015, the date on which an Order for Relief was entered by the Court.

1.26. "Priority Claims" means any claim, other than an administrative expense or a tax claim, to the extent entitled to priority in payment under 11 U.S.C. § 507(a).

1.27. "Priority Creditor" means any creditor that is the holder of a priority claim.

1.28. "Priority Non-Tax Claim" means any claim to the extent entitled to priority in payment under 11 U.S.C. §§ 507(a)(3), (4), (5), (6), or (7).

1.29. "Priority Tax Claim" means any claim to the extent entitled to priority in payment under 11 U.S.C. § 507(a)(8).

1.30.   Not Used.

1.31. "Rejected Contract" means any unexpired lease or executory contract not assumed in the Plan.

1.32. "Tax Creditor" means any creditor that holds a tax claim.

1.33. "Unimpaired Class" means any class of creditors whose claims are not impaired under this Plan in accordance with 11 U.S.C. § 1124.

1.34. "Unsecured Claim" means claims other than administrative expense claims, secured claims, priority claims, and tax claims.

1.35. "Unsecured Creditor" means any creditor that is the holder of an unsecured claim.

## ARTICLE II -TREATMENT OF NON-CLASSIFIED CLAINS -ADMINISTRATIVE EXPENSE CLAIMS, U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS

Pursuant to § l123(a)(1), administrative expense claims under § 507(a)(2), 507(a)(3), and priority tax claims under § 507(a)(8) are not classified.

*2.1 "Allowed Administrative Expense Claims"* under § 503 of the Code shall be paid in full on the Effective Date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtors.

The Debtors estimates that Allowed Administrative Expense Claims shall be $7,500 consisting of fees and costs of counsel for the Debtors after application of the retainer.   The Debtors shall pay counsel for the Debtors' allowed Administrative Expense Claim in full on the Effective Date or as otherwise agreed between the Debtors and counsel for the Debtors.

*2.2 "Allowed Priority Tax Claims"* under § 1129(a)(9)(C) shall receive, at the sole discretion of the Debtors, and in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Priority Tax Claim, (A) an amount equal to the unpaid amount of such Allowed Priority Tax Claim in Cash on the later of (i) the Effective Date, (ii) the date that such Claim becomes an Allowed Priority Tax Claim by a Final Order, or (iii) a date agreed to by the Claimholder and the Debtors; (B) as provided in § 1129(a)(9)(C) of the Bankruptcy Code, cash payments made in equal monthly installments beginning on the Effective Date, with the final installment payable not later than the sixtieth (60th) month following the Petition Date, together

with interest at 6% from the Effective Date through the date of payment thereof; or (C) such other treatment as to which the Debtors and such Claimholder shall have agreed in writing or the Bankruptcy Court has ordered or may order; provided, however, that the Debtors reserve the right to pay any Allowed Priority Tax Claim, or any remaining balance of any Allowed Priority Tax Claim, in full at any time on or after the Effective Date without premium or penalty; and, provided further, that no holder of an Allowed Priority Tax Claim shall be entitled to any payments on account of any pre Effective Date interest accrued on or penalty arising before or after the Petition Date with respect to or in connection with such Allowed Priority Tax Claim.

The Debtors do not believe they owe any allowed priority tax claims.

2.3 "*United States Trustee Fees*" required to be paid by 28 U.S.C. §1930(a)(6) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.  All U.S. Trustee Fees owing as of the Effective Date shall be paid on or before such date and all payments coming due after confirmation before closing of the case will be paid as they come due.  The Debtors shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. Section 1930(a)(6) within ten (10) days of the entry of the confirmation order for pre-confirmation periods and simultaneously provide to the United States Trustee an appropriate affidavit indicating the cash disbursements for the relevant period; and the reorganized debtors shall further pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) based upon all disbursements of the Reorganized Debtors for post-confirmation periods within the time period set forth in 28 U.S.C. §1930(a)(6), until the earlier of the closing of this case by the issuance of a Final Decree by the Court, or upon the entry of an Order by this Court dismissing this case or converting this case to another chapter under the United States Bankruptcy Code, and the party responsible for paying the post-confirmation United States Trustee fees shall provide to the United States Trustee upon the payment of each post-confirmation payment an appropriate affidavit indicating all the cash disbursements for the relevant period.

The US Trustee quarterly fees are current as of the filing of this Plan and the Debtors shall pay any amounts due in full on or before the Effective Date.

**ARTICLE III - CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS AND DESIGNATION AS IMPAIRED OR UNIMPAIRED**

3.1 Pursuant to § 1123(a)(1) and (3) of the Bankruptcy Code, all claims and interests (except the non-classified §§ 507(a)(2) and (a)(8) claims treated in Article II above) are classified and afforded the following treatment under the Plan.

"*Class* **1**" consists of the Allowed Secured Claim of Miami Dade County Tax Collector secured by a first lien on the Debtors' residence at 6841 SW 73 Court and investment property at 2051 NW 14th Street.  The Debtors' estimate that the Miami Dade County Tax Collector secured proof of claim 3 in the amount of $19,191.49, subject to a limited objection to be filed by the Debtors, shall be allowed in the reduced amount of $14,292.50.

**Plan Treatment Class 1**:  On the Effective Date, the Debtors shall commence making equal monthly principal and interest payments of $362.94 for the sixty month term of the Plan, which includes interest at the statutory 18% rate.  Miami Dade County Tax Collector shall retain its first lien on the real properties until paid under the terms of this Plan.

**Class 1** is impaired under the Plan.

"**Class 2**" consists of the Allowed Secured Claim of Wells Fargo Mortgage ("Wells Fargo") secured by a first mortgage on the Debtors' residence at 6841 SW 73 Court in the approximate amount of $212,937.  The Debtors are current on this note and first mortgage.

**Plan Treatment Class 2**:  On the Effective Date, the Debtors shall continue to make the monthly principal and interest payments required under the original terms of the note and first mortgage throughout the term of the Plan and through maturity of the note and first mortgage.  Wells Fargo shall retain its first mortgage against the real property until paid in full under the original terms of the note and first mortgage.

**Class 2** is unimpaired under the Plan.

"**Class 3**" consists of the Allowed Secured Claim of Wells Fargo Prime Equity Line ("Wells Fargo PEL") secured by a second mortgage on the Debtors' residence at 6841 SW 73 Court in the approximate amount of $250,000.  The Debtors are current on this note and second mortgage.

**Plan Treatment Class 3**:  On the Effective Date, the Debtors shall continue to make the monthly principal and interest payments required under the original terms of the note and second mortgage throughout the term of the Plan and through maturity of the note and second mortgage.  Wells Fargo PEL shall retain its second mortgage against the real property until paid in full under the original terms of the note and second mortgage.

**Class 3** is unimpaired under the Plan.

"**Class 4**" consists of the Allowed Secured Claim of Wells Fargo Business Residential Equity ("Wells Fargo BRE") secured by a third mortgage on the Debtors' residence at 6841 SW 73 Court in the approximate amount of $208,454.  The Debtors are current on this note and third mortgage.

**Plan Treatment Class 4**:  On the Effective Date, the Debtors shall continue to make the monthly principal and interest payments required under the original terms of the note and third mortgage throughout the term of the Plan and through maturity of the note and third mortgage.  Wells Fargo PEL shall retain its third mortgage against the real property until paid in full under the original terms of the note and third mortgage.

**Class 4** is unimpaired under the Plan.

"**Class 5**" consists of the Allowed Secured Claim of JP Morgan Chase Bank N.A.

("Chase") secured by a first mortgage on the Debtors' 14400 Lake Candlewood property in the approximate amount of $271,087.62 (per POC 10 filed November 24, 2015 by Chase).

**Plan Treatment Class 5**: On the Effective Date, the Debtors shall commence monthly principal and interest payments of $1,581.99, real estate tax escrow and insurance of $644.85 for a total monthly payment to Chase of $2,226.84. The principal and interest payment was calculated using the 5.75% interest rate under the note and thirty year amortization. The Debtors shall also pay an additional $125.87 monthly over the Plan term to satisfy postpetition escrow advances of $7,555.91. Chase shall retain its first mortgage against the real property until paid in full as provided for herein through the original maturity under the note and first mortgage. Unless modified above, all terms and conditions of the note, mortgage and related loan documents shall remain in full force and effect.

**Class 5** is impaired under the Plan.

"**Class 6**" consists of the Allowed Secured Claim of Wells Fargo Delaware Trust Company, N.A., as trustee for Vericrest Opportunity Loan Trust 2011-NPL1, c/o Caliber Home Loans, Inc., as loan servicer ("Caliber"), *partially* secured by a first mortgage on the Debtors' 2051 NW 14th Street property. Caliber filed proof of claim number 2 in the amount of $770,612.96. The Debtors' obtained an appraisal of the subject property as of October 24, 2014, reflecting an opinion of fair market value of $240,000. Pursuant to Order Granting Debtors' Motion to Approve Settlement With Caliber Home Loans, Inc. (DE 110, the "Agreed Order") Caliber's first mortgage was allowed in the reduced amount of $550,000.

**Plan Treatment Class 6**: Commencing April 1, 2016, the Debtors shall commence monthly principal and interest payments of $2,952.52, real estate tax escrow of $318.77, and insurance escrow of $208.33, for a total monthly payment to Caliber of $3,479.62. The principal and interest payment was calculated on the agreed value of $550,000 using the 5.0% interest rate under the note, and the remaining amortization period under the note of 260 months. Caliber shall retain its first mortgage against the real property until paid in full as provided for herein through the original maturity under the note and first mortgage. Unless modified above, all terms and conditions of the note, mortgage and related loan documents shall remain in full force and effect.

**Class 6** is impaired under the Plan.

"**Class 7**" consists of the Allowed Unsecured Claims in estimated amount of $207,189, including without limitation the wholly unsecured second mortgage of Fernando and Nelida Rodriquez of $179,400.

**Plan Treatment Class 7**: On the Effective Date, the Debtors shall commence quarterly payments to holders of allowed Class 7 claims of $1,098.45 pro rata accordingly the amount of said holder's claim as a percentage of total Class 7 claims. This represents an estimated distribution without interest of 10.5% of the aggregate Class 7 claims.

**Class 7** is impaired under the Plan.

"**Class 8**" consists of the Debtors' equity interest, if any, in their real and personal property. The Debtors have committed to funding the Plan with their net disposable income over the 5 year life of the Plan. The Debtors' shall retain their equity under the Plan.

3.2 Pursuant to § 1123(a)(3), the Debtors specifies that classes 1, 5 through 8 are *"impaired"* within the meaning of § 1124 and entitled to vote on the Plan.

3.3. The above treatment afforded holders of Classes 1, 5 through 7 claims shall be in full satisfaction, release and discharge of said Allowed Claims against the Debtors and the property of the Debtors upon the completion by the Debtors of all payments required under the Plan. Upon completion of the Plan payments the Debtors shall be discharged of any and all claims of any kind or nature, excluding the Debtors' continuing obligations to Class 5 and Class 6 claims which shall continue after the Plan life as set forth above.

## ARTICLE IV - EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Debtors do not have existing executory contracts or unexpired leases. Unless otherwise treated immediately above, all existing executory contract and unexpired lease shall be deemed rejected under the Plan allowing the party to the contract or lease to file a claim for rejection damages.

## ARTICLE V - MEANS FOR IMPLEMENTATION OF THE PLAN

5.1 The Plan payments will be made from the Debtors' available disposable income as calculated from the Debtors' projected income and expenses. The details of the projected income, expenses and disposable income are set forth in **Exhibit B** to the Disclosure Statement. Summaries of the Debtors' monthly debtor-in-possession reports during the bankruptcy case are **Exhibit E** to the Disclosure Statement.

5.2 Upon the Effective Date, ownership of the property of shall vest with the Reorganized Debtors.

## ARTICLE VI - PROCEDURE FOR RESOLVING CONTESTED CLAIMS

6.1 Unless otherwise ordered by the Bankruptcy Court, the Debtors shall litigate to judgment, settle or withdraw objections to contested claims subsequent to confirmation, if necessary.

6.2 Should any payment become due under the Plan on a contested claim, such payment shall be held in the Debtors' counsel's trust account pending the resolution of contested claim. Upon final resolution of the contested claim, the Claimant shall be paid a pro rata distribution of the funds held based on the percentage of the claim allowed, if any.

## ARTICLE VII -RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction over the Chapter 11 case for the purposes of determining any and all objections to the allowances of claims; determining any and all applications for compensation for professional and similar fees; determining any and all applications, adversary proceedings, and contested or litigated matters before the Bankruptcy Court or pending on the Confirmation Date; resolution of any tax issues through negotiation and approval of the Bankruptcy Court or by the filing of adversary complaints if deemed necessary; and construing and enforcing the provisions of the Plan relating to the payments and distributions to be made by the Debtors on or after the Confirmation Date. After closing of the case, the Court shall retain jurisdiction to reopen the case and enter a discharge upon completion of all plan payments by the Debtors.

### ARTICLE VIII - PROVISION TO INVOKE CRAMDOWN PROVISION IF NECESSARY

If all of the applicable requirements of 11 U.S.C. Section 1129(a), other than paragraph 8, are found to have been met with respect to the Plan, the Debtors may seek confirmation pursuant to 11 U.S.C. § 1129(b). For purposes of seeking confirmation under the cramdown provision of the Code, should that alternative means of confirmation prove to be necessary, the Debtors reserve the right to modify or vary the terms of the claims of the rejected classes, so as to comply with the requirements of 11 U.S.C. § 1129(b).

### ARTICLE IX - GENERAL PROVISIONS

9.1 Definitions. The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan.

9.2 Severability. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

9.3 Binding Effect. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

9.4 Controlling Law. Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Florida govern this Plan and any agreements, documents, and instruments executed in connection with this Plan.

9.5 Release and Discharge. The rights afforded in this Plan and the payments and distributions to be made hereunder shall be in exchange for and in complete exchange, satisfaction, discharge (subject to 11 U.S.C. §1141(d)(5), and release of all existing claims of any kind, nature or description whatsoever against Debtors or any of its assets or properties; and, except as otherwise provided herein, upon the Effective Date, all existing claims against the Debtors shall be, and be deemed to be, exchanged, satisfied, discharged, and released in full; and all holders of claims shall be precluded from asserting against the Debtors or their assets or properties or

successors in interest, any other or further claim based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.

Pursuant to 11 U.S.C. § 1141(d)(5), the Debtors shall not receive a discharge until the Court grants the Debtors a discharge on completion of all payments under the Plan.

9.6 Vesting Assets In Reorganized Debtors. Except as otherwise provided by this Plan, upon the consummation date, title to all assets and properties dealt with by this Plan shall vest in the Debtors, free and clear of all claims except as provided under this Plan and the Confirmation Order and the Confirmation Order shall be a discharge of Debtors' liabilities, except as provided for herein.

9.7 Modification. The Debtors reserve the right to modify the terms of the Plan before or at confirmation to the extent such modifications do not adversely affect treatment of any class of claims or interests including to increase payments to creditors as may deemed appropriate by the Court at the hearing on confirmation of the Plan. Specifically, the Debtors reserve the right to shorten the life of the Plan or increase the interest rate payable on Allowed Secured Claims to the extent such modifications are deemed necessary by the Court for purposes of determining whether the Plan is fair and equitable. Debtors also reserve the right to make whatever technical modifications and clarifications may be necessary to effectuate the purpose of the Plan.

9.8 Closing the Bankruptcy Case. Upon entry of the Confirmation Order and after the Effective Date, the Debtors may file an ex parte motion to close this case. Upon payment of payments of the Debtors required under the Plan, the Debtors shall file a motion to reopen the case for the purpose of the Court to enter a discharge under 11 U.S.C. §1141(d).

Respectfully submitted June 23, 2016.

By: /s/Armando M. Montero
Armando M. Montero, joint debtor
By: /s/ Limbania Barrios
Limbania Barrios, joint debtor

/s/ Peter Spindel
PETER SPINDEL
Florida Bar Number 0816183
Attorney for Debtor-in-Possession
Peter Spindel, Esq., P.A.
P.O. Box 166245
Miami, Florida 33116-6245
Telephone: (305) 279-2126
Facsimile: (305) 279-2127
peterspindel@gmail.com